## BOWERS et al. v. REMINGTON RAND, Inc.
### No. 9097.

Circuit Court of Appeals, Seventh Circuit.
Dec. 10, 1946.

Writ of Certiorari Denied March 31, 1947.

See 67 S.Ct. 1083.

---

Joseph A. Londrigan, of Springfield, Ill., H. Leland Simkins, of Mt. Pulaski, Ill., James B. Martin, and E. J. Coyle, both of Springfield, Ill., for appellants.

Howard L. Doyle, U. S. Atty., and Marks Alexander, Asst. U. S. Atty., both of Springfield, Ill., Charles S. Corben, of Washington, D. C., Dept. of Justice (J. Francis Hayden, Sp. Asst. to the Atty. Gen., of counsel), for appellee.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

This action for overtime was brought by appellants, employees of Remington Rand, Inc., under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. They were employed in the fire department maintained by appellee in its operation of the Sangamon Ordnance plant at Illiopolis, Illinois. The cause was tried by the court without a jury. The court made findings of fact and conclusions of law upon which he rendered a judgment in favor of defendant-appellee. 64 F.Supp. 620.

The firemen, prior to February 7, 1944, worked under a three-shift system, under which each shift worked eight hours a day six days a week. In the summer of 1943, after consideration was given to the installation of a two-platoon system, appellee prepared a proposed plan for submission to the employees. Under this plan, employees were required to remain within the plant area for 24 consecutive hours on alternate days. They were to be paid for 16 of the hours and during the remaining eight consecutive hours they were to be free to sleep in facilities provided for that purpose by appellee. If called to work during these eight hours, they were to be paid for all hours worked at time and one-half the basic hourly rate. Copies of the proposal were distributed among the firemen. All but three of appellants who were then employed as firemen signed documents approving and consenting to the institution of the system, but the three continued to work in the fire department after the system was instituted on February 7, 1944.

During the 16-hour-paid period from 8:30 a. m. to 12:30 a. m., the men cleaned the stations, the equipment, and their quarters; attended classes; and participated in special assignments, drills, and practice runs. One of the firemen at each of three fire houses was required to stand the telephone watch. The time devoted to this watch was not compensated for, but the man standing the watch was permitted the same period of time between 4:30 p. m. and 12:30 a. m. for rest or sleeping purposes. On the shift from 12:30 a. m. until 8:30 a. m., the men went to bed.

The sleeping quarters consisted of large rooms with wooden or iron beds and mattresses. These accommodations were of the same general character as those in the plant dormitories which employees paid to use. In addition, the men were furnished cooking facilities and utensils, bathing and toilet facilities, bedding and laundry service. Although the rest or sleeping period was not supposed to commence until 12:30 a. m., the men ordinarily retired before 12 o'clock midnight. Fire calls were infrequent and the firemen's sleep was rarely interrupted; the calls to appellants during their sleeping time consumed a total of 105.2 hours out of 78,655.4 hours during the period from February 7, 1944, to, and including, August 25, 1945.

The court found that the contract of employment provided for the operation of appellee's fire department under the two-platoon system; that the system imposed no restraint on the liberty or normal pursuits of appellants during the 8-hour sleeping pe-

riod other than the requirement that appellants sleep at the plant subject to call for service in case of emergencies; that the living conditions provided were suitable and reasonable; that in the actual operation of the system, appellee did not cause or permit appellants to be deprived of the 8-hour sleeping period or any part thereof out of each 24-hour shift without the payment of compensation therefor or without according them other suitable periods for sleep in lieu thereof; that appellee complied in full with the terms of the contract; that appellants were paid at the rate of 76 cents per hour for the first two 8-hour shifts (16 hours), with time and a half for all hours worked over 40 hours in any work week; and that time spent on emergency calls during the sleeping shift was paid for at the rate of time and one-half irrespective of the length of the work week.

Upon these facts the court concluded that appellants and appellee had entered into a contract of employment under which appellants agreed to sleep at the plant subject to call, and that the sleeping period did not constitute working time.

Appellants contend that the two-platoon system is in conflict with the intent and purpose of the Fair Labor Standards Act, that the contract of employment was invalid, and that they are entitled to be compensated for all time spent on appellee's premises.

In support of their contention that the contract of employment was in conflict with the intent and purpose of the Act and hence invalid, appellants point to the fact that one of the purposes of the Act was to spread employment, and they argue that the two-platoon system was an attempt to circumvent and evade § 7 of the Act, and they cite, among other cases, Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29; Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 427, 65 S.Ct. 1242, 1250, 89 L.Ed. 1705, 1711; and Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296.

 To be sure, agreements which violate the provisions or purposes of the Act will not be given effect. That rule is now settled; that rule, however does not apply to an agreement to settle the question whether certain activity or non-activity constitutes work or employment. Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949. We have examined the Helmerich and Youngerman cases, supra. These cases lend no support to appellants' position. They do not relate to sleeping time. They merely show that one of the purposes of the overtime requirements of § 7 of the Act was to spread employment, while the O'Neil case, supra, stands for the proposition that liquidated damages cannot be waived where there is no bona fide dispute of fact or law.

Appellants, relying on the case of Armour & Co. v. Wantock, 323 U.S. 126, at page 133, 65 S.Ct. 165, at page 168, 89 L.Ed. 118, in which the court said, that "* * * an employer * * * may hire a man to do nothing * * * but wait for something to happen," and on Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124, in which the court in effect said that "waiting time" may be working time, argue that they were on a 24 hour shift, restricted to fire stations or within hailing distance thereof, and wholly under the control and direction of appellee. They assert that they are entitled to compensation for their sleeping time solely because they remained at the plant subject to call or service in case of emergencies. In other words, what appellants in effect seek, is that the court make a new contract for the parties.

 After the close of all the evidence the trial court said: "Whether time may be compensable depends on circumstances of the case, and the mere fact that the employee was in some small degree deprived of some freedom of action doesn't alone determine the question. The firemen were willing to keep themselves available for duty if called upon during their rest period, they were willing in consideration of their employment as firemen to sleep on the premises * * *" With this statement we agree, since the facts show that appellants agreed to wait to be engaged, Skidmore v. Swift & Co., supra, 323 U.S. 137, 65 S.Ct. 161, 89 L.Ed. 124; hence the

time spent in sleeping is not compensable. See also Rokey v. Day & Zimmermann, 8 Cir., 157 F.2d 734.

Affirmed.