David KELLY, Plaintiff–Appellant,

v.

HINES–RINALDI FUNERAL HOME, INC., Defendant–Appellee.

No. 87–3138.

United States Court of Appeals, Fourth Circuit.

Argued March 10, 1988.

Decided June 1, 1988.

Robert K. Goren, for plaintiff-appellant.

Jerry R. Goldstein, for defendant-appellee.

Before MURNAGHAN and CHAPMAN, Circuit Judges, and McMILLAN, United States District Judge from the Western District of North Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

David Kelly appeals the district court's order granting summary judgment to his former employer, Hines–Rinaldi Funeral Home, Inc. Kelly's lawsuit alleges that Hines–Rinaldi violated the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. § 201 *et seq.* (1982), by failing to pay him overtime. We affirm the judgment of the district court.

I

The facts in this case are basically undisputed. Hines–Rinaldi hired Kelly on March 12, 1982 to perform light housekeeping duties during the hours of 9:00 p.m. to 12 midnight and 6:30 a.m. to 8:30 a.m., six days per week. During the night hours between midnight and 6:30 a.m. Kelly occupied an apartment on the premises of the funeral home. This arrangement benefited both parties, since a zoning ordinance required that someone live on the premises of the funeral home and Kelly paid nothing for the apartment. While there was some dispute as to whether Kelly was required to remain on the premises between midnight and 6:30 a.m., the district court properly resolved this in favor of Kelly, who opposed the motion for summary judgment, finding that he was required to stay on the premises during these night hours.

Between midnight and 6:30 a.m., Kelly's only duties were to answer the telephone, if it rang, and to go out and pick up a corpse if required. If the telephone was unanswered in the funeral home after three rings, it was answered in one of three other residences where the telephone rang simultaneously. If the call involved a request to pick up a corpse, whoever answered the call would, in turn, call an assistant

to help with the pick up. During the 20–month period prior to the filing of this lawsuit, there had been an average of 3.35 telephone calls and 2.2 trips to pick up corpses per month. The average time spent per trip was 49.7 minutes. Kelly's salary was initially $175 per week, but was increased several times between 1982 and 1986 to a level of $235 per week. Kelly was terminated in August 1986 for reasons unrelated to this litigation.

## II

Kelly seeks overtime pay under the theory that he was employed by Hines–Rinaldi to work from 9:00 p.m. until 8:30 a.m. the next morning, six days a week. This is a total of 69 hours per week, 29 hours of which would be overtime under the FLSA. *See* 29 U.S.C. § 207 (1982). We must therefore decide whether under the facts of this case the hours between midnight and 6:30 a.m. are properly considered working hours.

In *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), the Supreme Court addressed the question whether "waiting time," such as the night hours in the instant case, can be considered working time. The Court refused to set down a legal formula, but stated:

> Whether in a concrete case such time falls within or without the [FLSA] is a question of fact to be resolved by appropriate findings of the trial court. (citation omitted.) This involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to waiting time, and all the surrounding circumstances. Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged.

323 U.S. at 136–37, 65 S.Ct. at 162–63. The district court evaluated the facts of the instant case, and concluded, as a matter of law, that the time between midnight and 6:30 a.m. could not be considered working time. In other words, Kelly waited to be engaged. The district court noted that during this time Kelly was asked to stay in his *residence* and the interruptions of the telephone calls and corpse pickups were infrequent.

We agree with the conclusion of the district court. While there was no clear agreement between the parties on the exact nature of the time in question, practical considerations guide us to conclude that Kelly waited to be engaged. An overwhelming amount of the night hours was available for Kelly's uninterrupted use in his apartment, and this time was usually spent sleeping. The work Kelly was employed to do was part-time by its nature, light housekeeping, less than 4 telephone calls and less than 3 trips per month, and it is not realistic to assume that Hines-Rinaldi would employ someone for 69 hours per week, thereby incurring large overtime expense, to perform the tasks assigned to Kelly. Requiring an employer to pay overtime under this type of work arrangement would penalize not only the employer, but also the employee who relies on such nighttime arrangements to supplement his income.

In *Rural Fire Protection Co. v. Hepp*, 366 F.2d 355 (9th Cir.1966), the court noted that a factor which should always be considered in the present inquiry is whether the employee permanently lived at the work premises or merely slept there while on duty and as part of such duty. In *Hepp*, the firemen permanently lived at the fire house, were on duty on alternate days and were subject to infrequent interruptions. The court held that the nighttime hours were not compensable. 366 F.2d at 360–61. Similarly, Kelly permanently resided on his employer's premises and, therefore, he was not required to leave his home to wait on his employer's business. Numerous cases have held that nighttime hours in circumstances similar to the situation presented by this case are not working time. *See Van Dyke v. Bluefield Gas Co.*, 210 F.2d 620 (4th Cir.), *cert. denied*, 347 U.S. 1014, 74 S.Ct. 870, 98 L.Ed. 1137 (1954) (night employee of gas company required to remain on premises overnight, infrequent interruptions, not working

time); *Bowers v. Remington Rand, Inc.,* 159 F.2d 114 (7th Cir.1946), *cert. denied,* 330 U.S. 843, 67 S.Ct. 1083, 91 L.Ed. 1288 (1947) (firemen required to remain on premises, infrequent interruptions, not working time); *Rokey v. Day & Zimmerman, Inc.,* 157 F.2d 734 (8th Cir.1946), *cert. denied,* 330 U.S. 842, 67 S.Ct. 1082, 91 L.Ed. 1288 (1947) (firemen required to remain on premises, infrequent interruptions, not working time).

### III

We agree that Kelly was employed by Hines–Rinaldi between the hours of 9:00 p.m. to midnight and 6:30 a.m. to 8:30 a.m. and was waiting to be engaged between midnight and 6:30 a.m. Therefore, the night hours between midnight and 6:30 a.m. are not considered working hours and are not compensable. The district court is

AFFIRMED.

MURNAGHAN, Circuit Judge, concurring:

As the case was first presented to us, it appeared that a principle of some breadth might have to be laid down. Such a result would be unfortunate, because it would go too far to hold an employer free of any duty to treat the hours between midnight and 6:30 a.m. as "working time" when the employee was charged with some measure of responsibility or put under some restriction by the employer during that period. A general rule of that type favoring the employer could hold the potential for abuse, because the employer is usually in a stronger bargaining position than an individual employee in setting terms and conditions of employment.

However, Judge Chapman has largely allayed my concerns by carefully confining his decision in a manner comporting with the finest traditions of Anglo–American jurisprudence and deciding only "under the facts of this case." As he points out, the question is preeminently one of fact to be decided on the basis of whether the employee was engaged to wait or the employee was waiting to be engaged. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161,

89 L.Ed. 124 (1944). The facts before us in the instant case sufficed to insulate the trial court's decision from attack, and I concur, therefore, that it should be affirmed.